IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **CHRISTINA L. CORL,** : | |
| : | |
| Corl, : | Case No.  2:08-CV-234 |
| : | |
| v. : | **JUDGE ALGENON L. MARBLEY** |
| : | |
| : | **Magistrate Judge Mark Abel** |
| **CITIZENS BANK,** : | |
| *f/k/a* **REPUBLIC BANK,** : | |
| : | |
| Defendant. : | |

**OPINION AND ORDER**

**I.  INTRODUCTION**

This matter is before the Court on Plaintiff Christina L. Corl's motion to: (1) permanently enjoin Defendant Citizens Bank ("Citizens") from enforcing the terms of a Guaranty contract signed by Plaintiff; and (2) rescind the contract.  Plaintiff argues that the Guaranty is void due to fraud in the inducement or, in the alternative, mistake.  For the reasons stated below, the Court **DENIES** Plaintiff's motion.

**II.  FACTS AND PROCEDURAL HISTORY**

This matter involves the financing and construction of a residential condominium complex located in Worthington, Ohio.  Simsbury Place LLC ("Simsbury") was formed by Bruce Massa, Donald Falcoski, and Ronald Scherer (the "Members")  in 2006 to act as the owner and developer of the Simsburry complex.  Simsbury sought financing from Citizens to buy the land and build the complex.  To that end, Simsbury and Citizens prepared three inter-related written agreements: (1) the Construction Loan Agreement; (2) a Commercial Draw Note

in the amount of $730,000 (the "Acquisition Note"); and (3) a Commercial Draw Note in the amount of $5,200,000 (the "Construction Note"). On June 9, 2006, Citizens issued Commitment Letters for each note. In each of the Commitment Letters, Citizens stated that in order to issue the financing it would need the "unlimited joint and several personal Guaranties of Bruce Massa, Ronald E. Scherer, Donald J. Falcoscki, and Christina Corl" (the "Guarantors").[1]

Initially, the Construction Commitment Letter required that Citizens be provided "satisfactory evidence that at least ten of the units . . . have been pre-sold to 'investors.'" The Construction Loan Agreement's definition of pre-sold units required that buyers of the units obtain "an end-mortgage commitment for purchase of the unit . . . ." However, the Construction Commitment Letter signed on or before June 22, 2006, was amended by hand-written interlineations, which altered the definition of "pre-sold units" to include the following sentence, "Sections 1 and 2 of the Addendum to each written purchase agreement satisfy this requirement."[2] Plaintiff did not initial this interlineation,[3] nor was it dated, but Plaintiff did sign the last page of the Letter. The addendum identified in the interlineation refers to an addendum to the written purchase contracts for the "pre-sold-units," and reads:

> If, at the expiration of the thirty (30) day period, the Buyer has not delivered said written notification [of end-mortgage financing], this contract **shall terminate** and the earnest money deposit shall be returned to the buyer pursuant to paragraph 10.

---

[1] Trial testimony of Plaintiff and Bank representatives established that Plaintiff was added as a Guarantor because she and her husband, Donald J. Falcoscki, jointly owned their home and other major assets.

[2] Neither party disputes that the decision to alter the pre-sold-units requirement came at the request of Simsbury Place Members, however, the parties do not agree as to whether Plaintiff was aware of this request.

[3] The interlineation was initialed by two Guarantors other than Plaintiff.

This exact interlineated language concerning the addendum to pre-sold-units was expressly incorporated into the Loan Agreement that was signed by Plaintiff eight days later. This addendum is significant to Plaintiff's Guaranty because it makes clear that Simsbury Place was not required to ensure that there was guaranteed investor interest in the units being built—thereby removing the certainty that, at the very least, the project's costs could be recovered via unit sales to initial investors.

Additionally, the pre-sold-unit purchase agreements issued by the bank specifically authorized buyers of the units to opt-out of the agreement:

> § 1.2 Lender Pre-Approval:
>
> If the Buyer does not deliver a copy of the lender's pre-approval letter to the Seller and/or Seller's Broker within the stated time period, **this contract shall terminate and the earnest money deposit shall be returned to the Buyer** pursuant to paragraph 10. (emphasis added).

Addendum: 1. Loan Commitment and Closing

> .... If, at the expiration of the thirty (30) day period, the Buyer has not delivered said written notification, **this contract shall terminate and the earnest money deposit shall be returned to the Buyer** pursuant to paragraph 10. (emphasis added).

In her complaint, Plaintiff argues that she was provided with these loan documents prior to the closing on June 30, 2006. Of particular note, Plaintiff states in the complaint that she was provided the Construction Loan Agreement with the incorporated addendum language, and that she specifically reviewed the pre-sold-unit section prior to the closing. During trial, however, Plaintiff stated that she did not learn of the incorporated addendum language until August 2007. Plaintiff signed the Guaranty for the Simsbury Place loans on June 30, 2006.

Once the Project neared completion, Simsbury requested the buyers to close on their pre-sold-unit contracts, but all ten buyers declined to obtain end-mortgage commitments. In accordance with the written terms of the pre-sold-unit purchase agreements, Citizens paid back the buyers' initial cash deposits plus interest. Without the proceeds from pre-sold-units, and as a result of Simsbury's current difficulty in selling units, it has been unable to pay the monthly interest on the above-referenced loans and Citizens deems it to be in default. After a February 2008 appraisal, Citizens demanded a loan balance deficiency from Plaintiff in the amount of $1,680,070.[4]

On March 10, 2008, Plaintiff filed a civil complaint against Citizens for fraud or, in the alternative, mistake. On March 25, 2008, the Court issued a temporary restraining order against Citizens, temporarily enjoining the bank from seeking to collect on Plaintiff's Guaranty. On April 8-9, 2008, the Court heard argument on a combined permanent-injunction hearing and trial on the merits.

## III.  STANDARD OF REVIEW

The Supreme Court has set forth a four-factor test that Plaintiff must satisfy before a permanent injunction may issue: (1) that she has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between Plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *eBay Inc., v. Mercexchange, L.L.C.,* 547 U.S. 388, 391 (2006); *Audi AG v. D'Amato*,

---

[4] Citizens has not stated its intentions towards the other Guarantors, but, of particular relevance is the fact that the Guaranty signed by Plaintiff includes both a cognovit provision and a waiver of jury trial.

469 F.3d 534, 550 (6th Cir. 2006).  Unlike a preliminary injunction, a permanent injunction requires Plaintiff to show actual success on the merits, rather than a mere likelihood of success on the merits, as well as a demonstration that she has already suffered irreparable injury.  *Amoco Prod. Co. v. Village of Gambell, AK,* 480 U.S. 531, 546 n.12 (1987); *see also Audi AG*, 469 F. 3d at 550.  Plaintiff bears the burden of demonstrating the right to injunctive relief by clear and convincing evidence.  *See e.g., Chicago Title Ins. Corp. v. Magnusson*, 487 F.3d 985 (6th Cir. 2007).

## IV.  ANALYSIS

### A.  Success on the Merits

As a threshold matter, when pleading fraud or mistake, Federal Rule of Civil Procedure 9(b) requires a party to state with particularity the circumstances constituting the alleged fraud or mistake.  To comply with the requirements of Rule 9(b), a party must "allege the time, place, and content of the alleged misrepresentation on which she relied; the fraudulent scheme; the fraudulent intent of the [other party]; and the injury resulting from the fraud."  *Equal Justice Found. v. Deutsche Bank Trust Co. Am.*, 412 F. Supp.2d 790, 797 (S.D. Ohio 2005) (quoting *Coffey v. Foamex*, 2 F.3d 157, 161-62 (6th Cir. 1993)).

Plaintiff's complaint does not meet the particularity requirements of Rule 9(b).  Plaintiff does not specify when, where, or who fraudulently induced her to sign the Guaranty.  While Plaintiff does lay out her theory of the fraudulent scheme, she has not adequately demonstrated that Citizens intended to defraud her.  Specifically, Plaintiff has difficulty explaining why the decision to change the end-mortgage-commitment requirement demonstrates fraudulent intent, when in actuality, it is undisputed that the request for the change came from Simsbury Place

Members—her co-guarantors—not from Citizens. However, notwithstanding her insufficient pleading of fraudulent inducement, Plaintiff is also unable to prove by clear and convincing evidence fraudulent inducement on the merits.

### 1. Fraudulent Inducement

In order to prove a claim for fraudulent inducement, Plaintiff must demonstrate: (1) a false representation regarding a material fact to the transaction; (2) knowledge of the falsity or disregard for its truth; (3) intent to induce reliance on the misrepresentation; (4) reasonable reliance; and (5) injury resulting from the reliance. *Greenwalt v. Goodyear Tire & Rubber Co.*, 164 Ohio St. 1, 6 (1955); *Lloyd v. Classic Motor Coaches, Inc.*, 388 F. Supp. 785, 791 (N.D. Ohio 1974).

The evidence before the Court does not satisfy the elements of a fraudulent-inducement claim. Plaintiff does not present a colorable argument, nor did she adduce evidence at trial, regarding a false representation made by the Defendant. This ommission alone is fatal to Plaintiff's claim. The best that Plaintiff does is point to evidence that she claims shows an intent to mislead. Plaintiff cites an email sent by Simsbury Place Member Bruce Massa, requesting the bank to "delete" the end-mortgage-commitment provision from the pre-sold-units section. Plaintiff argues that Citizens's decision to move this requirement into an addendum, rather than altogether delete it, demonstrates Citizens's intent to mislead her. Plaintiff also argues that she reasonably relied on the Construction Commitment Letter's language, pre-interlineations, to form her opinion of the Guaranty she signed and that her reliance on that pre-interlineated language has placed her at risk of serious financial injury.

Citizens's contends that Plaintiff cannot prevail on her fraud claim because she has not

identified any false representations. Moreover, to the extent Plaintiff argues that "someone" misrepresented the terms of the Guaranty to her, such an argument is barred by the Parol Evidence Rule.  Citizens cites Ohio Revised Code ("O.R.C.")  1335.02(c), which states:

> [t]he terms of a loan agreement subject to this section, including the rights and obligations of the parties to the loan agreement, shall be determined solely from the written loan agreement, and **shall not be varied by any oral agreements that are made or discussions that occur before or contemporaneously with the execution** of the loan agreement. Any prior oral agreements between the parties are superseded by the loan agreement.

*Id.* (emphasis added); *see also Stone v. Nat'l City Bank*, 665 N.E.2d 746, 750 (Ohio App. 1995) (holding that "[t]he intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement.  The court need not go beyond the plain language of the agreement to determine the parties' rights and obligations if a contract is clear and unambiguous.).  Defendant argues that Plaintiff has therefore failed to meet the requirements of fraudulent inducement, and cannot attempt to do so via testimony of oral understandings reached prior to the signing of the Guaranty.

       The Court holds that Plaintiff's claim of fraudulent inducement fails because she has not presented any evidence establishing that Citizens made a false representation concerning a material fact, or had knowledge of any false representation.  *See Greenwalt*, 164 Ohio St. at 6.  As noted above, this omission alone is fatal to Plaintiff's claim. Further, Plaintiff's email evidence purporting to show an intent to mislead is not persuasive.  Massa's email on May 24, 2006, requested that the end-mortgage-commitment language be deleted; however, Massa initialed his approval of using the addendum language instead on June 22, 2006.  Therefore, there was open communication and understanding between Citizens and the Members concerning the end-mortgage-

commitment language, which completely negates the argument that Citizens intended to mislead them. Without proving that there was a false representation made by Citizens, or an intent to mislead, Plaintiff's fraudulent-inducement claim fails.

## 2. Mistake

Count II of Plaintiff's complaint alternatively asks the Court to rescind the Guaranty based upon the doctrine of mistake. Count II does not, however, explicitly identify whether there was unilateral or mutual mistake; however, under either theory, Plaintiff's claim fails.

### *a. Unilateral Mistake*

Under Ohio law, "[a] unilateral mistake by the guarantor as to the nature of the underlying transaction or by the creditor as to the capacity in which the guarantor signed may not be the basis for relief from the guaranty contract." *Campco Distrib., Inc. v. Fries*, 537 N.E.2d 661, 664 (Ohio Ct. App. 1987) (citing 69 Ohio Jurisprudence 3d (1986), Mistake, Section 6). For relief to be granted, "there must be evidence that demonstrates the creditor committed the fraud or knew or had reason to know of the guarantor's unilateral mistake." *Id.* at 665.

Plaintiff argues that Ohio law requires rescission of a contract where there has been no "meeting of the minds." *See Afco Credit Corp. v. Brandywine Ski Center, Inc.*, 610 N.E.2d 1032 (Ohio Ct. App. 1992); *Roberts Auto Center, Inc. v. Helmick*, No. 21073, 2003 WL 294354 (Ohio App. Feb. 12, 2003). She asserts that there were a number of misunderstandings between the parties, and that in Ohio, a "court can order rescission based upon misunderstanding." *Areawide Home Buyers, Inc. v. Manser*, No. 04-MA-154, 2005 WL 678512 at *4 (Ohio App. March 16, 2005). While Plaintiff employs the language of mutual mistake, she identifies three specific instances of seeming unilateral mistake: (1) she was under the mistaken belief that the

Construction Loan Agreement and the Pre-Sold-Unit contracts did not contain a financing contingency; (2) she was unaware of the interlineations to the commitment letters; and (3) she would not have agreed to the Guaranty had she been informed of the true risks of the transaction she was guaranteeing. Plaintiff argues that these instances of misunderstanding warrant rescission.

Defendant responds that Plaintiff has failed to produce clear and convincing evidence that she was unaware of the requirements in the underlying loan documents surrounding her Guaranty, but rests its response on the argument that Plaintiff has not demonstrated that Citizens had any knowledge of her alleged misunderstandings. Citizens cites to Plaintiff's trial testimony, where she stated that "[t]he bank didn't do anything with me on this transaction." Defendant argues that the only information articulating Plaintiff's beliefs that was passed on to the bank was the Opinion Letter issued on behalf of the "Borrower Group," declaring that the loan documents were binding obligations on the Members and Guarantors.

Citizens's arguments are well-taken. The Court has already held that Plaintiff has failed to prove her fraudulent-inducement claim, and thus the only other basis for rescinding the Guaranty based on unilateral mistake would be if the Defendant knew or had reason to know of Plaintiff's mistake. *See Campco Distrib., Inc.,* 537 N.E.2d at 665. Assuming, *arguendo,* that Plaintiff did indeed misunderstand the nature of the Guaranty, Citizens correctly points out that it had no reason to know that Plaintiff was mistaken. The closest Plaintiff comes to producing any evidence that Citizens knew of any of the aforementioned misunderstandings is her testimony that she had a telephone conversation with a loan officer from Citizens, Bill Gallant, in which he told her that the Real Estate Purchase Agreements could be "forced to close." Gallant's

testimony, however, contradicted Plaintiff's. He denied that he ever spoke to Plaintiff prior to the closing and asserted that he would never have told anyone that the bank could force purchasers to close on the Agreements because Citizens was not funding the end-loans for purchasers. Based on this minimal amount of controverted parol evidence, the Court does not find that Plaintiff has proven that Citizens knew or had reason to know of any potential misunderstanding between the parties.

Further, the cases cited by Plaintiff are inapposite. Both *Manser* and *Helmick* involve mutual mistake, which the Court addresses below. In *Brandywine Ski Center*, an insured party specifically requested a particular type of insurance contract and it was discovered months later that the insurance company had signed the insured party up for a different type of insurance contract. As a result, the court found that there had been no meeting of the minds. *Brandywine Ski Center, Inc.*, 610 N.E.2d at 1034. By contrast, there is no confusion concerning the Guaranty to which Plaintiff and Defendant are parties, and there has been no proof that the underlying documents were misrepresented to Plaintiff or materially altered after she signed the Guaranty. The evidence demonstrates that Plaintiff had an opportunity to review the final version of all documents at closing before signing off on the Guaranty.

### b. Mutual Mistake

In order to prove a claim for rescission of a contract based on mutual mistake, Plaintiff must show: (1) the existence of a contract, (2) a material mutual mistake by the parties, and (3) no negligence in discovering the mistake on the complainant's behalf. *Thomas v. Ohio Power Co.*, No. 06-CA-840, 2007 WL 2892029, at *4 (Ohio App. 7 Dist., September 27, 2007) (citing *Irwin v. Wilson*, 45 Ohio St. 426 (1887)).

Setting aside a discussion of factors one and three, Plaintiff simply failed to put forth any evidence that Citizens had a material misunderstanding of the Guaranty or the underlying loan documents. Quite the opposite, all the evidence indicates that Citizens was completely aware of the Real Estate Purchase Agreement requirements, and that the interlineations incorporated in the Construction Loan Agreement came by request of the Members and was openly understood by the parties to that agreement. Therefore, Plaintiff has not sufficiently put forth evidence warranting rescission based upon mutual mistake.

### 3. Discharge of Liability Due to Material Alteration

It is well settled, under Ohio law, "that a guarantor is discharged from liability whenever the terms of the contract or the nature of the obligation guaranteed is materially altered without the guarantor's consent." *Voelker-Belz Co. v. Johnson*, No. 04AP-280, 2004 WL 2892655, at *2 (Ohio App. 10 Dist., Dec. 2004); *see also Alside Supply Co. v. Sagar*, No. 1480, 1981 Ohio App. LEXIS 13323, at *3 (Aug. 1, 1981).

Plaintiff argues that the loan agreements she guaranteed required the pre-sold-unit buyers to seek end-mortgage commitments and that she was not alerted to, nor did she agree upon, changes to that requirement. Plaintiff cites *Voelker* and *Sagar* in support of her assertion that the changes that took place between the pre-interlineated document she relied upon and the documents signed on June 30, 2006, represent material alterations that discharge her liability.

Citizens counters that both *Voelker* and *Sagar* are inapposite. Citizens correctly points out that both of those cases revolve around the materiality of changes that were made after the guarantor had signed the loan agreements, which is not what happened here. *See Voelker-Belze Co.,* 2004 WL 2892655, at *1; *See Sagar,* 1981 Ohio App. LEXIS 13323, at *1. Further,

Citizens emphasizes Plaintiff's statement in her complaint that she specifically examined the final versions of the loan documents, which include the pre-sold-unit addendum language. Citizens argues that no material alterations have been made to the loan agreements subsequent to the June 30, 2006, closing and therefore Plaintiff cannot escape liability under a theory of material alteration.

Contrary to suggestions in Plaintiff's briefing, the Court finds that there is no evidence to support the conclusion that the loan agreements underlying Plaintiff's Guaranty contract were materially altered subsequent to the closing on June 30, 2006. Further, Plaintiff stated that she specifically reviewed the incorporated interlineated language in the Construction Loan Agreement before signing the Guaranty.  Plaintiff may have been mistaken about the significance of the incorporated language in the Construction Loan Agreement, as she states in the Complaint, but her confusion does not amount to a material alteration to the Guaranty.

### III.  CONCLUSION

Plaintiff's claims have failed on the merits, and therefore a permanent injunction cannot issue.  Accordingly, Plaintiff's request for a permanent injunction is **DENIED**.

**IT IS SO ORDERED.**

     s/Algenon L. Marbley
**ALGENON L. MARBLEY**
**United States District Court Judge**

**DATE: July 1, 2008**