# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| CHRISTINA L. CORL, | : |
| | : |
| Plaintiff, | : |
| | : Case No. 2:08-CV-234 |
| v. | : JUDGE ALGENON L. MARBLEY |
| | : Magistrate Judge Abel |
| CITIZENS BANK, | : |
| *f/k/a* REPUBLIC BANK, | : |
| | : |
| Defendants. | : |

## OPINION AND ORDER

## I. INTRODUCTION

This matter is before the Court on Plaintiff Christina Corl's ("Corl") Motion for Reconsideration (Doc. 38) filed with this Court on July 2, 2008. Corl asks this Court to reconsider its July 1, 2008, Opinion and Order denying her request to enjoin permanently Citizens Bank ("Citizens") from enforcing the terms of a Guaranty contract, and to rescind the contract. (Doc. 36). In her Motion for Reconsideration, Corl argues: (1) it was improper for the Court to analyze her argument under the legal theories of fraud or mistake because in her reply brief in support of a permanent injunction (Doc. 35) she moved the Court to amend her Complaint and rescind the Guaranty contract on the grounds of a lack of meeting of the minds, rather than fraud or mistake; and (2) Citizens had a duty under Ohio law to inform her of the material terms of the transaction she was being asked to guarantee. For the following reasons, the Court **DENIES** Corl's Motion for Reconsideration.

## II. FACTS AND PROCEDURAL HISTORY

This matter involves the financing and construction of a residential condominium complex located in Worthington, Ohio. Simsbury Place LLC ("Simsbury") was formed by Bruce Massa, Donald Falcoski, and Ronald Scherer (the "Members") in 2006 to act as the owner and developer of the Simsbury complex. Simsbury sought financing from Citizens to buy the land and build the complex. To that end, Simsbury and Citizens prepared three interrelated written agreements: (1) the Construction Loan Agreement; (2) a Commercial Draw Note in the amount of $730,000 (the Acquisition Note"); and (3) a Commercial Draw Note in the amount of $5,200,000 (the "Construction Note"). On June 9, 2006, Citizens issued Commitment Letters for each note. In each of the Commitment Letters, Citizens stated that in order to issue the financing it would need the "unlimited joint and several personal Guaranties of Bruce Massa, Ronald E. Scherer, Donald J. Falcoscki, and Chistina Corl" (the "Guarantors").[1]

Initially, the Construction Commitment Letter required that Citizen be provided "satisfactory evidence that at least ten of the units... have been pre-sold to 'investors.'" The Construction Loan Agreement's definition of pre-sold-units required that buyers of the units obtain "an end-mortgage commitment for purchase of the unit." However, the Construction Commitment Letter (the "Letter") signed on or before June 22, 2006, was amended by hand-written interlineations, which altered the definition of "pre-sold units" to include the following sentence, "Section 1 and 2 of the Addendum to each written purchase agreement satisfy this requirement."[2] Plaintiff did not initial this

---

[1] Trial testimony of Plaintiff and Bank representatives established that Plaintiff was added as a Guarantor because she and her husband, Donald J. Falcoscki, jointly owned their home and other major assets.

[2] Neither party disputes that the decision to alter the pre-sold-units requirement came at the request of Simsbury Members, however, the parties do not agree as to whether Plaintiff was aware of this request.

interlineations,[3] nor was it dated, but Plaintiff did sign the last page of the Letter. The addendum identified in the interlineations refers to an addendum to the written purchase contracts for the "pre-sold-unit," and reads:

> If, at the expiration of the thirty (30) day period the Buyer has not delivered said written notification [of end-mortgage financing], this contract **shall terminate** and the earnest money deposit shall be returned to the buyer pursuant to paragraph 10.

(emphasis added). This exact interlineated language concerning the addendum to pre-sold-units was expressly incorporated into the Loan Agreement that was signed by Plaintiff eight days later. This addendum is significant to Plaintiff's Guaranty because it makes clear that Simsbury was not required to ensure that there was guaranteed investor interest in the units being built—thereby removing the certainty that, at the very least, the project's cost could be recovered via unit sales to initial investors.

Additionally, the pre-sold-unit purchase agreements issued by the bank specifically authorized buyers of the units to opt-out of the agreement:

> § 1.2 Lender Pre-Approval:
>
> If the Buyer does not deliver a copy of the lender's pre-approved letter to the Seller and/or Seller's Broker within the stated time period, **this contract shall terminate and the earnest money deposit shall be returned to the Buyer** pursuant to paragraph 10.

(emphasis added). Addendum: 1. Loan commitment and Closing

> ... If, at the expiration of the thirty (30) day period, the Buyer has not delivered said written notification, **this contract shall terminate and the earnest money deposit shall be returned to the Buyer** pursuant to paragraph 10. (emphasis added).

---

[3] The interlineation was initialed by two Guarantors other than Plaintiff.

In her complaint, Plaintiff argues that she was provided with these loan documents prior to the closing on June 30, 2006. Of particular note, Plaintiff states in the complaint that she was provided the Construction Loan Agreement with the incorporated addendum language, and that she specifically reviewed the pre-sold-unit section prior to the closing. During trial, however, Plaintiff stated that she did not learn of the incorporated addendum language until August 2007. Plaintiff signed the Guaranty for the Simsbury loans on June 30, 2006.

Once the Project neared completion, Simsbury requested the buyers to close on their pre-sold-unit contracts, but all ten buyers declined to obtain end-mortgage commitments. In accordance with the written terms of the pre-sold-unit purchase agreements, Citizens paid back the buyers' initial cash deposits plus interest. Without the proceeds from pre-sold-units, and as a result of Simsbury's current difficulty in selling units, it has been unable to pay the monthly interest on the above-referenced loans and Citizens deems it to be in default. After a February 2008 appraisal, Citizens demanded a loan balance deficiency from Plaintiff in the amount of $1,680,070.[4]

On March 10, 2008, Plaintiff filed a civil complaint against Citizens for fraud or, in the alternative, mistake. On March 25, 2008, the Court issued a temporary restraining order against Citizens, temporarily enjoining the bank from seeking to collect on Plaintiff's Guaranty. On April 8-9, 2008, the Court heard argument on a combined permanent-injunction hearing and trial on the merits.

In the Opinion and Order filed July 1, 2008, this Court found that Corl had failed to present a colorable argument either to justify or to adduce evidence at trial that would sustain a claim for

---

[4]Citizens has not stated its intentions towards the other Guarantors, but of particular relevance is the fact that the Guaranty signed by Plaintiff includes both a cognovit provision and a waiver of jury trial.

fraudulent inducement against Citizens. The Court next found that Corl failed to put forth evidence that would warrant rescinding the Guaranty contract based on either unilateral or mutual mistake. Finally, the Court held that there was no evidence to support the conclusion that the loan agreement underlying Corl's Guaranty contract was materially altered subsequent to the closing. Accordingly, this Court held that Corl's claims failed on their merits and denied her request for a permanent injunction.

Corl now moves the Court to reconsider its July 1, 2008 Order and Opinion on the grounds that the Court mischaracterized and failed to adequately address her lack of meeting of the minds argument and that Citizens breached its duty to inform her of the material terms of the Guaranty contract.

### III. STANDARD OF REVIEW

The Federal Rules do not provide for a "Motion for Reconsideration." If a Motion to Reconsider is filed within ten days of the judgement, most courts will treat the motion as a motion to amend or alter the judgement under Fed. R. Civ. P. 59(e). *Inge v. Rock Fin. Corp.,* 281 F.3d 613, 617 (6th Cir. 2002). Corl filed her Motion within ten days of the entry of judgement for Citizens. The Court will therefore consider Corl's Motion as a motion to alter or amend judgement under Fed. R. Civ. P. 59(e).

Fed. R. Civ. P. 59(e) permits parties to move for a court to alter or amend a previously issued judgement.[5] Generally, there are three situation which justify reconsideration under Fed. R. Civ. P.

---

[5]Rule 59 states in pertinent parts:
(a) Grounds: The court may, on motion, grant a new trial on all or some of the issue, after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court; or after a nonjury trial, for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court.

59(e): "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or to prevent a manifest injustice." *Dualite Sales & Serv., Inc. v. Moran Foods, Inc.*, No. 1:04-CV-13, 2005 WL 2372847, at *1 (S.D. Ohio Sept. 26, 2005) (citing *In re Cont'l Holdings, Inc.*, 170 B.R. 144, 146 (Bankr. N.D. Ohio 1992)). However, a "Rule 59(e) motion may not be used to re-litigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgement." *J.P. v. Taft*, No. C2-04-692, 2006 WL 689091, at *13 (S.D. Ohio Mar. 15, 2006) (quoting *Brown v. City of Syracuse*, No. 5:01-CV-1523, 2005 WL 2033492, at *1-2 (N.D.N.Y. Aug. 17, 2005)). Further, "[a] motion to alter or reconsider a judgment is an extraordinary remedy and should be granted sparingly because of the interest in finality and conservation of scarce judicial resources." *Vanguard Transp. Sys., Inc. v. Volvo Trucks N. Am., Inc.*, No. 2:04-CV-889, 2006 WL 3097189, at *2 (S.D. Ohio Oct. 30, 2006) (quoting *United States v. Limited, Inc.*, 179 F.R.D. 541, 547 (S.D. Ohio 1998) (internal citation omitted)). "If the movant simply regurgitates arguments previously presented or presents arguments which originally could have been argued, then the movant's proper recourse is an appeal to the circuit court. *Id.* (internal citation omitted).

## IV. ANALYSIS

### A. Lack of Meeting of the Minds

First, Corl asks the Court to reconsider its July 1, 2008 Opinion and Order on the grounds that the Court incorrectly analyzed her argument under the legal theory of mistake. Corl argues a failure of a meeting of the minds is a theory separate and distinct from mistake, and as such, the

---

(e) Motion to Alter or Amend Judgement: Any motion to alter or amend a judgement shall be filed no later than 10 days after entry of the judgement. Fed. R. Civ. P. 59.

Courts analysis and denial based on mistake was insufficient and did not address her argument. For the following reasons, this argument is not well taken.

In support of her proposition that mistake is a mutually exclusive legal theory from that of a failure of a meeting of the minds, Corl cites to the case of *Henderson v. Asebrook*, No. 1735, 1983 WL 2427 (Ohio Ct. App. May 9, 1983). Corl states *Henderson* held that "[u]nlike an analysis under a theory of mistake, failure of meeting of the minds does not concern what a party could or should have discovered, only what the parties actually believed to be the terms of the contract." (Doc. 38 at 3). Corl cites to the Courts Opinion and Order, (doc. 36), the Trial record, and Plaintiff's Exhibit 11 to support her argument that under this rule the parties failed to reach a meeting of the minds.

Defendant Citizens, in contra to Corl's "meeting of the minds" argument, states that the Court has already specifically addressed this argument on page 8 of its July 1, 2008 Opinion and Order. (Doc. 39 at 5). Citizens also asserts that Corl's argument is flawed in that there can be no lack of meeting of the minds without some flavor of mistake. Citizens, however, fails to provide the Court with any controlling or persuasive authority to support this statement.

The Supreme Court of Ohio has relied on *Henderson* as evidence that Ohio courts recognize mutual mistake as valid grounds for rescission of a contract. *Reilley v. Richards*, 632 N.E.2d 507, 510 (Ohio 1994). This strongly suggest Ohio courts do not view a lack of meeting of the minds and mistake to be completely independent legal theories as Corl suggests.

Regardless, however, of the interplay between lack of a meeting of the minds and mistake, reconsideration is inappropriate because, as stated by Citizens, the Court has already specifically addressed this argument and dismissed it, Op. And Order 8-10, and as such, to reconsider this argument would result in merely re-litigating old matters. Further, Corl has not provided any

recognized reason for the Court to reconsider its Opinion and Order. Corl has not cited to any intervening change in controlling law. Corl does not put forth any new evidence that was unavailable at trial. In fact, the only evidence Corl cites as supporting reconsideration is evidence already considered by the Court and found in Court documents. (Doc. 38 at 3-4). Lastly, the Court finds no clear error of law or manifest injustice regarding this issue. As such, reconsideration of this issue is inappropriate.

**B. Duty to Inform**

Second, Corl asks the Court to reconsider its July 1, 2008 Opinion and Order on the grounds that Citizens breached its duty to inform her of the material terms of the transaction she was being asked to guarantee. To support this request, Corl only states that she cited ample case law indicating that under Ohio law a lender has a responsibility to inform a guarantor regarding the material terms of the transaction she is being asked to guarantee. (Doc. 38 at 2).

Defendant Citizens, in response to Corl's duty to inform argument, states that the Court already considered and dismissed this argument on pages 11 through 12 of its July 1, 2008 Opinion and Order, and to reconsider this matter would serve only to re-litigate this matter. The Court agrees.

In its July 1, 2008 Opinion and Order, the Court throughly and adequately addressed Corl's "duty to inform" argument. The Court found that for a guarantor to be discharged form liability, applicable law required a material alteration to the contract without the guarantor's consent. (Doc. 36 at 11). Here, the only material alteration was made prior to Corl signing the Guaranty contract, and through her own admission, Corl stated that she specifically examined the final version of the

loan document that she signed. (Doc. 36 at 12). For these reasons the Court dismissed Corl's "duty to inform" argument.

Corl has not put forth any intervening change in controlling law or new evidence that was unavailable at trial to support the Court reconsidering Citizen's duty to Corl. Further, the Court finds no clear error of law or manifest injustice regarding this issue. As such, to reconsider this issue would only serve to re-litigate old maters and would be inappropriate.

## V. CONCLUSION

For these reasons stated herein, Plaintiff's Motion for Reconsideration is **DENIED.**

**IT IS SO ORDERED.**

    **s/ Algenon L. Marbley**
    **ALGENON L. MARBLEY**
    **United States District Court Judge**

**DATE: March 10, 2009.**